Court of Federal Claims Jeffery Robinson, Attorney for the Appealants Good morning, Your Honors. May it please the Court, I'm Jeffrey Robinson for the Appellants. Counsel, before you get started, I have a question that I'd like both counsel to address. If I read the docket correctly in the parallel case in the Court of Federal Claims, there were at least some settlement discussions regarding the claim that is going forward          I can see it. I can see it. I can see it. I can see it. I can see it. I can see it. courts. I don't believe, if I understand the docket correctly, that there have been efforts made to mediate this case and wrap a settlement around everything that is pending. I ask both of you if you think it would be helpful to refer this case to mediation. If the government thought it was helpful, we would consider mediation, Your Honor. I thought that in this case it was routinely sent to the mediation department and a determination was made that it would not be helpful, but we are prepared to mediate. There have not been active and extensive settlement discussions in the Court of Federal Claims case. It's just a random docket entry? The topic was raised, but it hasn't really gone anywhere. So what's the status of that case? The discovery has been basically completed, the fact discovery, that is. We are expecting that the government will renew its attempt to throw the case out of court by filing a summary judgment motion, and that will be heard and determined later this year. And then at some point it will be set for trial when we prevail against that. And the government's represented by different sets of counsel in the... Yes, Your Honor. It just seems unworkable, to Judge Graber's point, that perhaps roping everything together to try to resolve the actual dispute would be... We are certainly willing to consider mediation and settlement of the entire dispute if the government in good faith wishes to do that. We do agree that there are, since there are... It's unfortunate in the sense that Congress has set up two different tracks that we must go down to take care of claims arising out of the same situation. Right, but it's not the first time that's happened, and it's not the first time we've suggested that perhaps rather than keeping a lot of lawyers busy working piecemeal on the same problem, that they sit down to try to come up with a more holistic approach. This is true. Unfortunately, my concern in this case, like we had in the Angel case that's cited in the briefs, is that the government doesn't have much of an interest in settling, and that's why we haven't made a lot of progress in that direction. Well, we haven't heard from the government yet on that point. That is true. Okay. So proceed with what you were wanting to tell us. There are reasonable limits under the scope of Section 2680C relating to tax assessment and collection, and in this case, the government clearly exceeded those limits. I'd like to address that briefly, and then I'll touch briefly on the law enforcement proviso, and then I'll touch briefly on the remaining arguments that the government has why the lower court should not be reversed. I hope to reserve a couple of minutes for rebuttal. In this, if one looks at the totality of the cases construing Section 2680C on the exclusion of jurisdiction relating to claims arising out of the assessment and collection of taxes, we see that they invariably arise under basically the context of taxpayers that are seeking to recover money, the taxes that they paid, or relate to a collection of taxes from them. They're either taxpayers making those claims, or they are people that stand in the shoes of taxpayers, or people who had an interest in tax property that was collected, or they are the actual tax collector themselves that was involved in that case. In our situation, we have a case that's completely unique and distinct. We have someone that is more in the nature of a commercial vendor that was dealing with the IRS in the course of its criminal investigation, and let the government borrow its money so that the government could conduct its criminal investigation, and then there was a court that occurred when the government refused and failed to repay that money and retaliated against the businesses for asking that it be repaid. So this situation has nothing to do with the assessment or collection of a tax, because the outcome of this case will not affect in any way the government's ability to collect a tax, the amount of a tax it's due, whether a refund is due, or anything else. The only thing that is at stake in this case is whether someone who lent the government money, who provided funds to the government for its investigation, is entitled to be repaid. Now, we know that there is no prohibition in the Federal Tort Claims Act against claims against the government arising out of a criminal investigation. We cited in our papers the Rakes case, the state of Davis, and the Morales case. Some of these were claims against the FBI for criminal investigations that the FBI was the government allowed injured citizens, or the courts allowed innocent citizens to pursue tort claims arising out of those criminal investigations. This is basically the same situation we have here. Am I correct in understanding that the government has never asserted that the plaintiffs were wrongdoers of any sort? That is correct. In the course of this proceeding here, yes, Your Honor. But I don't know why the criminal nature of the investigation matters. If they're— I'm having a hard time hearing. Forgive me. I don't know why the criminal nature matters, as long as—I mean, the language of 2680C speaks to whether or not it's an effort to assess or collect a tax. And so, some of that work is done on the civil side, and some of it's done on the criminal side, but it seems to me that if it's fairly described as an effort to assess or collect, that it's within the scope of the exception to the waiver, isn't it? I don't—I think there is no—I agree there's no specific civil-criminal distinction in 2680C, but the conduct here of the government does not—vis-a-vis our client, the plaintiffs does not relate to the assessment or collection of a tax. They're not seeking— Well, it seems to me the conduct of the government here arguably doesn't relate to assessment or collection of a tax as to anybody, but certainly not as to your client. That is correct, Your Honor. And you used the word loaned. I think you said they lent the money, but your client's money was used as bait. Yes? Yes. Okay. And the folks they were trying to catch are people who were filing fraudulent returns— That is correct. —seeking to basically steal money from the IRS. These people weren't entitled to refunds at all, were they? That is correct, Your Honor. All right. What's the—the Fifth Circuit has applied this, and we have said in our right case that the scope of 2680C is not unlimited, but has the Ninth Circuit ever applied it in the way you suggest here? Have we ever found any— I don't— —IRS conduct to be beyond the scope? I don't think the Court has ever considered a situation like this in the Ninth Circuit. Right. If we have, I haven't found one, but I also haven't found a situation where we have found that conduct by the IRS has exceeded the scope of 2680C, have we? I'm not aware of it, Your Honor. Okay. And the Fifth Circuit has. Yes. Has anybody else? Well, yes, in—well, in the Hurt case, for instance, and in—and there's another case in Narvis, but in the Hurt—the Hurt case and also the Wilkerson case. In the Hurt case, that was a situation where the plaintiff alleged that there was retaliation going on against the plaintiff for activities that the plaintiff had done in connection with defending assessment and collection of tax cases. And this was out of the—this was a district court case out of the Fourth Circuit, and the Court distinguished and said, if you're alleging retaliation for conduct that—your conduct towards the IRS, that is not a case involving assessment and collection of taxes. And we have a retaliation case in our situation here. In the Johnson case, the Fifth Circuit took this on, and I thought the Johnson case was a—it arguably did arise out of an effort to assess or collect taxes. There was an allegation there of tax evasion, right, I think, originally. Yes. But the—but the—but the comments made by the IRS that revealed some confidential information took place after that investigation. The tax investigation was over. Right. The issuance of the press release, that's correct. All right. So is that—it just seems to me that that comes closer to the line, because at least—it of assessing or collecting. In that case, I think they were looking into whether or not a deduction had been claimed correctly. Right. But in—that's correct. But we're not even in the situation of Johnson because we're not—our clients aren't the taxpayer. We never were the taxpayer. Right. Right. We're just the lender, okay? Right. Right. And so—and our position would be that when, you know, when we loaned that money and the government went on with its investigation, it was basically severed, just like the end—it as far as we were concerned. Our clients just wanted to be repaid back the money, and then the government retaliated and said, no, we're not going to. Right. But—or failed to. But the government's argument here is that this is part of assessing and collecting because there were refunds that were claimed on the other side of the coin, not vis-a-vis your client. But what's your response to that? Well, I don't think we interpret Section 2680C that way because the intent of Congress, as far as we know, in passing that particular section, was to say that the—Congress has set up other avenues of relief for taxpayers, for people whose taxes were mistakenly assessed and collected. And so we're not going to give those taxpayers, those people that already have an avenue of relief, yet another way. We're not going to duplicate that machinery. And so the taxpayers can, you know, pursue their other course of action. We're not—our clients aren't taxpayers here, so there is no other mechanism of relief for them. And so the scope of 2680C shouldn't be—you know, there was no intent to apply 2680C here to taxpayers in our situation because they don't have that remedy that Congress assumed was in place when they adopted 2680C. Is there any case law, whether it's in the Court of Federal Claims, in contract, or anywhere, that approaches a fact pattern like this one? Well, I think there is in the Angel case, Your Honor, but it did not—that's a case involving a sting operation for the importation of customs—importation of paintings in the United States. And there, the government asked the bank—a bank—to advance money to the sting victim, okay? The government's investigation failed, and the sting victim kept the money—no, the sting victim was able to make—get the money from the bank, and the bank asked the government to pay him back, and the government said no. And the Court of Appeal—they filed a tort claim action that was upheld on appeal, excuse me. And the—but the specific application of 2680C was not addressed in this case. Right, right. Okay. Counsel, you've asked us to—you're asking us to draw a line between IRS actions to collect money from a taxpayer and those that may involve third parties. And you're a third party to an effort. Let's suppose that I thought that they were—that this was an effort to collect taxes from the people who were defrauding the government. Your client is not one of those people. That is correct. They're a third party. A totally independent third party, and there's never been a—excuse me. My question is, are there any cases out there involving 2680C that involved third parties where the court said it applies? No. I would say no. The government will say Perkins is such a case, but Perkins is not a true third party. Perkins, the plaintiff, was the tax collector, and he was the—he was the person that was actually going out on site to collect the money. And so he was participating—the plaintiff was participating directly in the collection of taxes. So Perkins is the wrongful death, the mine—but that's an effort to—somebody died trying to execute on a tax lien—a judgment. The tax collector died. And right, so collecting the mining equipment, right? Yes. But it caused a wrongful death. Yes. But that's still an effort to basically to collect a tax. That's why I say it doesn't—I don't think it's truly a third party case. But the plaintiff there was not the party against whom the assessment had been made. Is that correct? That is correct. But the plaintiff was the tax collector. So the plaintiff was the person working on behalf of the government to go and collect the tax. We're not in that situation here. But he was an outside contractor, right? Yes, but he was an outside contractor, tax collector, going out to collect that particular tax. And we're not— I guess I'm struggling to figure out if it isn't just a line at the third party how we would define or limit the line that you're seeking us to draw. I think you go back—the court can go back and look and see what was 2680C intended to do. It was intended to avoid duplicating relief for taxpayers whose taxes had been wrongfully taken by the government. But it seems potentially broader than that to me. Because to me, just looking at the words of it, it would cover the hypothetical that I've just raised. I'm trying to—the IRS is trying to figure out Judge Bybee's taxes, and they say that Judge Christin has records that are relevant to that, and they issue a subpoena, and there are problems over on this side. I'm not sure why that wouldn't be covered, even though it isn't the taxpayer who would be involved directly. Because that person has no—Congress didn't intend to exclude that second person from a remedy there, and they only intended to protect and preserve the taxpayer mechanisms and avoid duplicating those. And so there was no intent to—Congress passed the Federal Tort Claims Act to grant relief to taxpayers—not taxpayers—to grant relief to members of the public who were injured by ordinary torts. And they wanted to do that so that they would not be besieged by private claims for compensation that were then being submitted to Congress. So there wasn't any particular need to grant taxpayers that relief, because they already had a mechanism for it, okay? But in our situation, there isn't a mechanism for it. You have used your time, but we'll give you a minute for rebuttal since you got a lot of questions. Good morning, Your Honors. Gretchen Wolfinger for the United States. I will attempt to answer your question about settlement efforts. As Judge Christin pointed out, I am not the attorney handling the case in the Court of Federal Claims, but I have spoken with her. As opposing counsel said, discovery has concluded, and it's expected that the government will file a summary judgment motion by February 28th, I believe, is their deadline for that. I do not know about— What about this case? Would mediation be potentially helpful in this case? I don't believe so, Your Honor, for two reasons. In the procedural posture we're in, it's really—we're asking the panel to decide legal issues. If, in fact, the result is adverse to the government, it would go back to the district court for factual development, and it might at that time be a better time to address settlement depending on what the facts are vis-a-vis the claim under the Federal Tort Claims Act. Also, it does sound, in the presentation made by opposing counsel to the court, it does really sound, when he referred to his client as a commercial vendor, it does sound much more like a contract claim that belongs in the Court of Federal Claims, and that may be the best place to work out this issue if need be. That satisfactory? That's helpful. Thank you very much for your answer. Section 2680C of the Federal Tort Claims Act, which I'll refer to the tax exception, is quite broadly worded, as I think the Court recognizes any claim arising in respect of the assessment or collection of any tax. Why does this arise from the assessment or collection of a tax? Well, I think that's the ethnic casualty case, Your Honor, that refunds are considered part of the collection process. That presupposes that there's a tax due, and these are folks that didn't—this had nothing to do with them paying income taxes, right? They were ripping off the government. They were filing for false refunds. But I don't know the nature of the false refund. First, in order to get a refund, tax has to be collected, generally. The government has money that it's collected that it needs to refund because everything isn't due an owing. We don't know any of that in this case, right? The government's taking the position here. You're taking the position here that you're just immune, period. So we haven't gotten to any of that yet. What we know is vis-a-vis, at least in the allegations in the briefs, that this third party is, I think, entirely innocent. The government's not claiming that he did anything wrong. I think that was the answer to the question. As far as I know, we haven't taken a position in this case, certainly, because as I noted, we haven't gotten to factual development. I don't believe that is the position in the Court of Federal Claims. So he put stop payments on these checks, right? No, there was a discussion, or there may have been a discussion about putting stop payment on the checks, but you mean Snyder. Yeah. Snyder. Snyder put stop payments on these checks, right? Oh, and then the agent... To protect himself from these folks who were apparently using false identification, that's the allegation, and the allegation is that the government agent said, no, please don't do that. You're interfering with a tax... We basically have a sting going on here, and we want to use your money as bait. That's his allegation, and then the money wasn't returned, and it's millions of dollars, and the government's response is, we're immune. Is that right? Yes, under 26 ADC. It falls within the tax exception. But the tax exception requires that whatever is claimed arise in respect of the collection or assessment of a tax. It doesn't say the IRS is immune for anything it does, so it has to be somewhat narrower, and you assess taxes against a taxpayer who owes money. You collect taxes from a taxpayer who owes money, and when a scam artist is out there trying to rip off the government or rip off private parties, I have difficulty seeing how that has to do with the collection or assessment of a tax as distinct from trying to keep the process from being fraudulent, which is somewhat of a different animal. We know based on the allegations of the complaint that a fraudulent return was submitted, and that someone went in with false identification in an attempt to cash that check. I don't know at this point if it's clear that it was simple identity theft, or if in fact a fraudulent return had been submitted claiming a greater refund that was due. Your response isn't nearly that nuanced. Your response is that the government's not going to be accountable either way. Yes, I think so, because based on the Aetna casualty case, refunds fall within collection. Well, it's not absolute immunity, right? No, it's not. No, it's not, although I do think it is very broad, and the Capozzoli case says that if the actions of the IRS agent are wholly unrelated to his duties, ultra vires, fall outside his duties. And here he was acting well within his duties to criminally investigate. Counsel, what if the tax collector, what if an IRS agent were on his way to pick up a check in settlement and ran a stop sign and hit somebody? Driving a government car. I understand, Your Honor, and I have to be honest. I don't know what the government's defense of that action would be if it could be tied to collection in some sort. I just gave you the facts. He's on his way. He's not on his way to lunch. He's on his way to a house to pick up a check in settlement. They've worked all this out. It's been long, long, hard negotiations, and the agent is going to go over there and pick up the check. He's driving a government car, pulls through a stop sign, hits somebody. Now what? I might, it is conceivable that the government under those circumstances would argue that it fell under 26 ADC because it was in pursuit of his duties with rebuttal. It doesn't say in pursuit of. It doesn't say related to. It would be arising in respect of the collection of a tax. What would be the purpose for that? Because this is what the FTCA was adopted for in the first place was so that we didn't have to have the private bill. So that if the sergeant on the air base pulls through in the Jeep and hits the family in the van on their way to the barracks, that they can just go and sue under state law. So why would it be different for the IRS under this? Is there a policy reason that you can explain? Yes, I would say two things, and this again ties into what opposing counsel was saying. He maintained that 26 ADC was a remedy for people who had no other remedy available. Now at least on the facts of this case, he does have another remedy available in the Court of Federal Claims, whether or not that may be successful. Okay, the Court of Claims is different. Yes. The facts and scenario I've given you, the only remedy would be a private bill, wouldn't it? Yes. If you don't have an FTCA claim, you haven't got anything, right? Yes. And I'm saying I'm not sure what the government would do under those circumstances because it is being tied directly to collection, but I would also say that one of the policies underlying 26 ADC is that the government or the IRS's collection or enforcement efforts not be dampened. That the IRS is not- Not be what? Not be dampened or of influence affected. That if there were numerous lawsuits involving IRS agents driving to pick up a collection check or something else, issuing a summons, that if that fell within their duties, there could be, I don't know how many car accidents there would be, but there could be several hundred FTCA claims and that that would not only hamper the effect of the ability of the FTCA. If the FTCA is a waiver of sovereign immunity, it would be opening the purse strings to paying out and that's- Well, yes, but if that's Congress's intent and the government acts wrongfully, then it ought to be paying people whom it damages. So I'm not sure the policy argument helps you, but it seems to me that in this case at least, the alleged damages arise in respect of the investigation of fraud against the United States. It seems quite far removed from the actual collection of attacks, the actual assessment of attacks, because it's not about that. The investigation is about stealing from the government. But stealing from the government in connection with a refund. It's for example, it is not- So why should this be, why do you think Congress would have differentiated this from someone who is out of pocket because they were helping the government figure out who was stealing tires from the, you know, service station on an army base? I mean, it's theft from the government. So what would be the possible reason why it would be treated differently? And as I think I've explained earlier, that they view the collection of the revenue assessment in a collection as a sacrosanct set of duties or responsibilities that they want to protect. Counsel, is there any fact pattern that comes close to this one? I think that, well, it's probably a combination of cases, etna casualty, which talks about refund, and I would also say that it was more than just stealing from the government. These were, this investigation was tied to specific refund filers. It wasn't a general investigation. Well, I'm not sure why that matters, because what matters is whether investigating fraud or theft is the same, that is necessarily the collection or assessment of a tax. Well, and this may be talking past your question. The criminal civil doesn't matter as long as a collection is at issue, and we would maintain that the refund is part of the collection process. But to answer Judge Kristen's question, I think Perkins comes closest. It's clear that Perkins, Perkins and etna are both so distinguishable. Perkins is still an effort to collect a piece of mining equipment to satisfy a tax lien. That's assessment or collection, right? It's a third party, but we're maintaining, again, that the refunds at issue here are part of the collection process, and that refunds and determining whether those were bona fide refunds are part of the collection. I guess I view the third party question as only a piece of it, because it seems, just speaking for myself as I plod through these issues, it seems to me that claims by third parties could well fall into the collection or assessment of a tax. Subpoena records that are related to how much tax another taxpayer owes, and you do something bad while you're looking at those records, or you reveal some records or something. To me, that's all about assessment of a tax, so being a third party doesn't mean that this doesn't apply. But I'm more concerned about whether the basic activity in which the IRS is engaged here counts as the collection or assessment of a tax in the first place, and that's my concern. I understand, Your Honor, and I would repeat that we believe that the refund activity falls within collection, but in regard to your earlier point about this being a criminal investigation, although the district court didn't reach it, Section 2680A, the exception for the discretionary function under the Federal Tort Claims Act, would also apply here. It's a criminal investigation, and clearly the government has discretion in the way it conducts a criminal investigation. Does it have discretion to keep other people's money? Well, there's... They would have to conduct discovery if they went down that route to look at whether policies or practices are in place or at issue when they conduct this kind of sting operation, right? I mean, that hasn't been reached in the district court. Are you asking us to reach that in the first instance? I think that you can, because when you look at the pleading here, and also in response to our briefing, the other side has not identified any statute, any regulation, or any policy that was violated by the conduct of the agent in this case. So is your position, counsel, that the United States government could ask a citizen to participate in a sting operation and has, in his words, loan money, use it as bait to not interrupt a sting operation, and that the government has the discretion to keep that money? We have to accept the allegations as pled in the complaint, and I would say yes, that falls under 2680A. And fortunate as it is, they had discretion on how to conduct the investigation. Including taking other people's money. Millions of dollars. It's basically a takings problem, is it not? Well, and yes, it could very well be a taking problem, and that goes back to my earlier point. That's something within the purview, I believe, of the Court of Federal Claims action. That's not a federal tort claim. They claim they would not be left without a remedy. And as I said, there's nothing that's been pled in the complaint or in response to the Internal Revenue Manual cites about discretion in conducting an investigation. That has been rebutted, and certainly that's public record. I recognize, Your Honors, that this is a difficult case, and the facts as pled are unfortunate, but it is our position that either the tax exception or the discretionary function exception applies. Thank you. Thank you, Counsel. Mr. Robinson? Very briefly, under the discretionary function exemption, there is no regulation, policy, or procedure which gives the government the discretion to violate the Constitution. And once we conduct discovery, we'll be able to show the specific regulations that were in this situation where they acted, they did not have the discretion to do what they were doing. Well, Counsel, let's suppose that the, let's suppose that IRS agents were engaged in some kind of a massive effort to recoup money from the government that involved having to go in and take somebody's, get somebody's house, and get somebody out of the house in a very hostile situation. In the process of doing that, they ended up destroying part of the neighbor's property. These are the kinds of things that occur in wartime and things like that. And we've always held that the takings clause does apply to those kinds of, to those kinds of things, and the government may be liable in takings, but it doesn't, but it's not unconstitutional to take the property. I agree with everything the Court said. But I don't think we're in that situation because there's going to be a regulation that will say that the agent does not have the authority to borrow money from a taxpayer without getting it. There is going to be a regulation. I believe there will be a regulation. But you don't have, you don't know where this regulation is published or where it is? Your Honor, I don't have it now, and I'm speaking based on discovery that's been commenced in the other case. But I think what we're going to find out is that the agents in question did not follow proper channels, and they did not have the authority, they did not get the authority ahead of time to borrow money, and they did not get the authority ahead of time to make promises to pay it back, and therefore they would have acted outside the discretion in taking those steps. And the agents would have been out of their element, out of their responsibilities, even if your client had never discovered what was going on here? Yes, I believe so. Out of compliance with their own policies and procedures. Thank you, Counsel. The case just argued is submitted, and we appreciate very much the arguments that both of you have made in this very interesting and challenging case.
judges: Graber, Bybee, Christen